## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-39


SHANNON TODD BORDELON

VERSUS

KEY ENERGY SERVICES, INC.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 12-03223
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and J. David Painter, Judges.


**AFFIRMED.**

**Michael E. Parker**
**Allen & Gooch**
**Post Office Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1350**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       Key Energy Services, Inc.

**Jere Jay Bice**
**Veron, Bice, Palermo & Wilson, L.L.C.**
**Post Office Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**COUNSEL FOR CLAIMANT/APPELLEE:**
       Shannon Todd Bordelon

**AMY, Judge.**

The claimant sought workers' compensation benefits after allegedly sustaining injury in a work-related accident. Although the employer disputed whether the injury was work-related, it largely defended the claim pursuant to La.R.S. 23:1081, noting a post-accident drug screen revealed the presence of cocaine and amphetamines in the claimant's system. The workers' compensation judge ruled in favor of the claimant, awarding both compensation benefits and penalties and attorney's fees. The employer appeals. For the following reasons, we affirm.

### Factual and Procedural Background

The claimant, Shannon Todd Bordelon, alleged that he severely injured his finger while working for Key Energy, Inc. in April 2012. Mr. Bordelon asserted that the alleged accident occurred when a crank he was using to lower a light tower spun out of control, striking his hand. Mr. Bordelon testified that upon reporting the accident at the work site, he was taken to the Acadiana Center for Orthopedic and Occupational Medicine for an initial evaluation. Following an examination, x-rays, and a post-accident drug test, Mr. Bordelon was referred for immediate treatment at an emergency room.

Once at the emergency room, Mr. Bordelon was treated for a fracture of the finger and a laceration. Although surgery was recommended upon consultation with a hand surgeon, the surgery was not completed at that time. Instead, the employer denied further compensation benefits and terminated Mr. Bordelon's employment on May 2, 2012. The employer did so after receipt of the results of the post-accident drug test, which identified the presence of cocaine and amphetamines.

Mr. Bordelon alleges that, thereafter, the condition of his finger began to worsen but that medical care providers denied treatment in light of the work-related nature of the problem. Mr. Bordelon explained at trial that he eventually began reporting that he sustained the injury while playing basketball due to the need for treatment. Ultimately, Mr. Bordelon underwent two surgeries which resulted in the partial amputation of the injured finger.

Mr. Bordelon filed this matter seeking workers' compensation benefits as well as penalties and attorney fees. Key Energy and its compensation insurer defended the claim on the basis of La.R.S. 23:1081, pointing to both the positive drug test and the claimant's statements to medical providers that he injured his finger while playing basketball. At the hearing, Mr. Bordelon denied cocaine use, but admitted to having ingested two tablets of his girlfriend's weight loss drug two days before the accident. He denied that he felt any of the drug's effects at the time of the accident. Mr. Bordelon further challenged the validity of the drug screen and alleged that the testing facility's failure to follow protocol in processing the sample may have resulted in his sample being confused with that of another patient.

Following a hearing, the workers' compensation judge ruled in favor of the claimant. In reasons for ruling, the workers' compensation judge found that the causation of the work-related accident was not related to drug use. Therefore, the judge awarded compensation benefits, subject to a credit for unemployment benefits and undeclared income received during the contested period. The judge additionally determined that Key Energy failed to adequately investigate the occurrence of the accident and instead denied benefits upon receipt of the positive

drug test. Therefore, the resulting judgment included $2,000.00 in penalties and $15,750.00 in attorney fees for the improper termination of benefits.

Key Energy appeals, asserting that:

1. The Hearing Officer erred in awarding penalties and attorney's fees on a claim that was denied because of a positive post-accident drug test.

2. The Hearing Officer erred in concluding that Key Energy was not entitled to the presumption that Plaintiff's intoxication was the cause of his accident found at La.R.S. 23:1081.

3. The Hearing Officer erred in concluding that Plaintiff rebutted the presumption that his intoxication was not a contributing cause of his accident.

**Discussion**

*La.R.S. 23:1081*

Key Energy defended this matter, in part, on the defense of intoxication provided by La.R.S. 23:1081. However, as stated above, the workers' compensation judge rejected that defense. In reasons for ruling, the judge recognized that Mr. Bordelon contested whether the testing protocol was followed in obtaining the sample for the drug screen and that he additionally challenged whether any intoxication caused the subject accident and resulting injury. On appeal, Key Energy's arguments pursuant to La.R.S. 23:1081 are two-fold. First, it contends that the workers' compensation judge erred in failing to apply the presumption that intoxication was the cause of the accident. It further argues that the workers' compensation judge erred in its determination that Mr. Bordelon rebutted that presumption by establishing that intoxication was not a contributing cause of his accident.

3

Louisiana Revised Statutes 23:1081 sets forth an employer's defenses to a claim for compensation. With regard to intoxication, La.R.S. 23:1081 provides that:

(1) No compensation shall be allowed for an injury caused:

. . . .

(b) by the injured employee's intoxication at the time of the injury[.]

Paragraph (2) thereafter indicates that it is the employer's burden of proving that he or she is exempt from providing compensation because of injury for any reason provided by the subsection, including intoxication.

With regard to Key Energy's arguments in these assignments of error, La.R.S. 23:1081 provides certain presumptions as follows:

(3) For purposes of proving intoxication, the employer may avail himself of the following presumptions:

. . . .

(5) If there was, at the time of the accident, evidence of either on or off the job use of a nonprescribed controlled substance as defined in 21 U.S.C. 812, Schedules I, II, III, IV, and V, it shall be presumed that the employee was intoxicated.

. . . .

(8) In order to support a finding of intoxication due to drug use, and a presumption of causation due to such intoxication, the employer must prove the employee's use of the controlled substance only by a preponderance of the evidence. In meeting this burden, the results of employer-administered tests shall be considered admissible evidence when those tests are the result of the testing for drug usage done by the employer pursuant to a written and promulgated substance abuse rule or policy established by the employer.

. . . .

(12) Notwithstanding any language to the contrary, once the employer has met the burden of proving intoxication at the time of the accident, it shall be presumed that the accident was caused by the

4

intoxication. The burden of proof then is placed upon the employee to prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer.

Thus, and assuming for purposes of discussion of this assignment that Key Energy established intoxication by the positive drug test, La.R.S. 23:1081(12) establishes a presumption "that the accident was caused by the intoxication."

Key Energy suggests that the workers' compensation judge's ruling reveals ambiguity as to whether it applied the presumption, noting that the judge discussed Mr. Bordelon's challenges to the integrity of the testing procedure. While it is true that that the workers' compensation judge noted the argument regarding the testing protocol, there is no indication that the presumption was not applied. Rather, the ruling acknowledged "[t]he governing law is Louisiana R.S. 23:1091 [sic] which creates two separate rebuttable presumptions that apply to workers' compensation cases where intoxication is an issue." Thereafter, the workers' compensation judge addressed Mr. Bordelon's contention that the testing protocol was not followed.

Ultimately, however, the workers' compensation judge recognized that: "The crucial question here really is if cocaine or one of its metabolites were in the body of Shannon Bordelon, was he impaired at the time the crank handle spun out of control, smashing his hand in the process. Was the degree of intoxication a contributing cause of this accident or not." Thereafter, the workers' compensation judge concluded that any intoxication was not a cause of the accident, stating that:

> In the instant case, no one – not a single witness – suggested, much less said, that Mr. Bordelon appeared impaired in any fashion. It appears that the impairment (if that's the correct term) really applies to the apparatus that Mr. Bordelon was using at the time of the accident.

> Testimony was that under normal circumstances, lowering a tall metal tower is relatively safe because the hand crank is controlled by a device that prevents the crank from going out of control. In this case,

5

it appears that the hand crank was released by the mere pulling of the pin which immediately released the entire weight of the structure onto the handle.

It does not appear that Mr. Bordelon's lack of attention, lack of focus, poor judgment, delayed reaction or much of anything else had to do with the weight of the tower pushing immediately and directly on the crank, causing it to spin out of control in reverse.

I cannot recall the defense ever mentioning the potential problem with this hand crank, choosing rather to put their entire focus on the drug screen, which has problems, serious problems, of its own.

Thus, notwithstanding the question of whether the workers' compensation judge applied the presumption, it is clear that the workers' compensation judge's ultimate determination was consistent with La.R.S. 23:1081(12). That provision establishes that, even upon the application of the presumption, the claimant may "prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer."

After review of the record, we find no manifest error in the workers' compensation judge's conclusion that any intoxication was not a contributing cause. Rather, the testimony supports a determination that Mr. Bordelon rebutted the presumption available to Key Energy through La.R.S. 23:1081. Mr. Bordelon explained that the accident occurred on a damp morning when the handle to the light tower crank was wet. He stated simply that, unlike other cranks he was accustomed to, this crank did not have a safety mechanism on it and that the wet handle slipped from his hand, spun out of control, and struck his hand. The workers' compensation judge acted within its factfinding role in accepting that testimony as credible. Additionally, as noted by the workers' compensation judge, the record evidences an absence of testimony revealing any indicia of intoxication.

6

Accordingly, we find no merit in Key Energy's assignments regarding application of the presumption of La.R.S. 23:1081(12) and Mr. Bordelon's corresponding rebuttal of that presumption.

*Penalties and Attorney Fees*

Key Energy next challenges the workers' compensation judge's determination that it failed to reasonably controvert the claim. Notably, Key Energy starkly presents its question to this court as "whether it is ever appropriate for a Hearing Officer to award penalties and attorney's fees following denial of a claim because of a positive drug test." The employer suggests that there is no indication that it acted unreasonably in denying the claim given the positive drug test.

The workers' compensation judge awarded penalties ($2,000.00) and attorney's fees ($15,750.00), finding that Key Energy failed to reasonably controvert the claim in its denial of benefits. In this regard, La.R.S. 23:1201(F) provides that:

> Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim . . . .
>
> . . . .
>
> (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

7

On appeal, we review a decision to award penalties and attorney fees as a question of fact and, therefore, subject to the manifest error or clear error standard of review. *Long v. Bengal Transp.*, 13-793 (La.App. 3 Cir. 12/11/13), 127 So.3d 1103, *writ denied*, 14-98 (La. 3/14/14), __ So.3d __.

While Key Energy suggests that the positive post-accident drug screen provided the reasonable basis for its denial, the workers' compensation judge determined that Key Energy single-mindedly relied upon the intoxication presumption of causation without appropriately considering alternative causes. Further, the workers' compensation judge noted that Key Energy also questioned the occurrence of the work-related accident, despite clear evidence that the injury was, in fact, sustained on the job site. On these points, the workers' compensation judge explained:

> Granted, the alleged accident was not witnessed, but the employer's argument that Mr. Bordelon did not have his finger shattered by the out-of-control hand crank as he described it does not fit entirely well within the chronology of what the evidence shows happened. Right after he reported the alleged accident, he was taken to the employer's office for a few days [sic] by a supervisor, and then driven to a doctor in Lafayette. The medical reports suggest, actually say in plain terms, that the injury was traumatic. The suggestion that he sustained this injury before he went to work and then presented himself with a severely smashed hand to his supervisor when he got on the job seems far more creative than credible.
>
> The theory that Mr. Bordelon was not injured on the job and that he invented the out-of-control crank theory apparently did not appear to be the employer's initial response. As a matter of fact, the employer seemed to have been struck with the idea of a faked accident just about the same time as he got in his hand a positive drug report.
>
> The scenario of a hand crank which spun out of control because it was not equipped with a standard safety device which prevents the handle from becoming uncontrollable seems plausible, even likely, given the circumstances. And the injury that he reported was not some esoteric, subjective hard-to-diagnose pain, but was rather a bleeding, shattered hand, hurt severely enough for a surgeon to immediately see the need for an operation.

8

The workers' compensation judge further rejected Key Energy's contention that it did not credit Mr. Bordelon's statement regarding the occurrence of the work-related accident in light of his statement to health care providers that he was injured playing basketball. Instead, the workers' compensation judge noted that Mr. Bordelon admitted the false statement, saying he did so because he had been turned away repeatedly by health care providers in light of the work-related nature of the occurrence. The workers' compensation judge observed that: "Afraid he would lose his finger if he did not give [sic] some sort of treatment soon, he went to Charity Hospital and lied to them about the circumstances of how he was hurt." The record indicates that Mr. Bordelon thereafter received treatment for the condition.

Returning to Key Service's reliance on the positive drug screen in its defense, the workers' compensation judge found that, in addition to the fact that Mr. Bordelon challenged the way the drug screen was conducted:

> It looks as if when the employer read the positive drug screen, it terminated not only all medical and indemnity benefits but also ceased any meaningful communication with Mr. Bordelon. I can't see where much, if any, investigation was conducted into the incident at all. The employer's actions suggest that he was under the impression that a positive drug screen pretty much ends the inquiry, but that's simply not true. At trial, no co-worker disagreed with Mr. Bordelon's story of how the accident occurred.
>
> . . . .
>
> I think the overarching problem here was that once the employer saw the term "test positive", it was decided that the case should be closed and shut instantly and no more investigation or inquiry was required. That assumption is incorrect.
>
> The employer seemed to totally disregard the facts of the accident and then to dismiss out of hand any idea that anything other than impairment or intoxication played a role in this evident.
>
> . . . .

Because the defendant did not reasonably controvert this claim, attorney's fees and penalties are appropriate. Total reliance on the results of a drug screen, especially one of questionable validity, should not trigger an automatic, knee-jerk termination of all worker's compensation benefits when other significantly relevant facts and circumstances should be investigated, reviewed, and considered.

We find no manifest error in this conclusion. Certainly, La.R.S. 23:1081 provides the defense of intoxication and provides an employer with certain presumptions. Significantly, however, La.R.S. 23:1081(12) instructs that, even upon application of the presumption of causation, the employee may rebut that presumption of causation.

As pointed out in reasons for ruling, Key Energy was aware that Mr. Bordelon presented on the work site with a serious laceration and fracture requiring immediate medical attention. Yet, at the hearing, it defended its claim on a subsequent statement of causation made by the claimant only some period after benefits had been denied. Additionally, and even in the presence of the positive drug screen, Mr. Bordelon offered the only evidence regarding the contributing causation of intoxication, or lack thereof, by denying that he had suffered from the effects of any substance taken prior to the occurrence. Neither did his medical records reflect any observations regarding intoxication. Finally, Mr. Bordelon's girlfriend testified that when she spoke with Mr. Bordelon immediately after the accident, he was in pain, but he did not otherwise sound impaired.

Simply, Key Energy had a positive drug screen and relied upon that drug screen exclusively. Given the surrounding circumstances as permissibly determined by the workers' compensation judge, we find no manifest error in its imposition of penalties and attorney fees.

This assignment lacks merit.

*Additional Attorney Fees*

Finally, we note that, in his brief to this court, Mr. Bordelon seeks additional attorney fees for work performed on appeal. However, we do not make an additional award insofar as Mr. Bordelon has filed neither an appeal nor an answer in pursuit of those fees. *See* La.Code Civ.P. art. 2133.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assigned to the appellant, Key Energy Services, Inc.

**AFFIRMED.**